UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANNY EISENBERG,<br><br>    Plaintiff(s),<br><br>  v.<br><br>J. PAUL WIESNER & ASSOCIATES CHARTERED, et al.,<br><br>    Defendant(s). | Case No. 2:19-CV-439 JCM (DJA)<br><br>ORDER |

Presently before the court is defendants J. Paul Wiesner & Associates, Chartered, d/b/a/ Radiology Associates of Nevada ("RAN") and Pueblo Medical Imaging, LLC's ("PMI") (collectively, "defendants") motion for summary judgment. (ECF No. 26). Plaintiff Danny Eisenberg ("Dr. Eisenberg") filed a response (ECF No. 33), to which the defendants replied (ECF No. 36).

**I. Background**

The present case arises from Dr. Eisenberg's employment with defendants. (*See* ECF No. 5). Dr. Eisenberg is a radiologist, over the age of 40, who was employed at defendants' medical practice from 1993 until 2017. *See id.*

Defendants argue that Dr. Eisenberg has a long history of behavioral and performance issues beginning as early as 2007. (ECF No. 26 at 5). Performance issues included "cherry-picking" jobs to inflate his productivity numbers, anger management problems, and mishandling

**James C. Mahan**
**U.S. District Judge**

of various procedures. *Id.* at 10. Defendants do not indicate that any formal disciplinary action was taken against Dr. Eisenberg as a result of these issues.[1] *See id.*

Dr. Eisenberg alleges that in 2014, Dr. Matthew Treinen ("Dr. Treinen"), president of RAN, commenced a campaign to demote Dr. Eisenberg from his shareholder status. (ECF No. 5 at 4). In 2014, defendants voted in favor of implementing a plan to change the status of radiologists from shareholder to associate at the age of 65. (ECF No. 36 at 4). In effect, this plan did two things: (1) it removed voting rights from radiologists age 65 and older and (2) it lowered the requisite voting threshold to terminate radiologists age 65 and older. (ECF No. 33 at 18). Dr. Eisenberg was the next radiologist to reach age 65 upon implementation of the plan. *Id.* The plan was not implemented due to concerns expressed by the radiologists. (ECF No. 36 at 5).

On or around March 28, 2016, Dr. Eisenberg made a complaint against Dr. Treinen to a member of the RAN ethics committee. (ECF No. 33-7 at 5). Dr. Eisenberg believed he was being singled out for performance issues. *Id.* Dr. Eisenberg did not receive a response from the ethics committee. *Id.*

In or around May 2017, defendants placed Dr. Eisenberg on a six-month probation period for a multitude of performance-related problems. (ECF No. 26 at 15). Many of these performance-related problems had surfaced in the months leading up to the probation period, including mishandling procedures and behavior issues. *Id.* Defendants issued a performance improvement plan ("PIP") with a number of terms to which Dr. Eisenberg agreed he would adhere. *Id.* at 16. One of the terms required that a supervising physician be present the next time Dr. Eisenberg performed a specific type of procedure. *Id.* The PIP expressly stated that Dr. Eisenberg "was aware he must comply with this PIP or further disciplinary action may be issued, up to and including termination." *Id.*

On May 25, 2017, Dr. Eisenberg filed a discrimination charge with the Nevada Equal Rights Commission ("NERC"). (ECF No. 33-7 at 25). Dr. Eisenberg's NERC charge was

---

[1] As a result of a behavioral incident, Dr. Eisenberg was mandated to go through anger management counseling in 2008. (ECF No. 26 at 6). However, defendants do not indicate that Dr. Eisenberg was subject to a formal performance-based disciplinary action at that time. *See id.*

**James C. Mahan**
**U.S. District Judge**

- 2 -

jointly filed and submitted with the Equal Opportunity Commission ("EEOC") on August 23, 2017. (ECF No. 5 at 2).

On September 5, 2017, Dr. Treinen and Debbie McEvoy ("McEvoy"), RAN's director of human resources, met with Dr. Eisenberg to discuss more medical-procedure-related issues that had come to light after implementation of the PIP. (ECF No. 26 at 17). Additionally, when asked if he had complied with the requirement to have supervision to perform a specified procedure, Dr. Eisenberg replied that he "did not try" to obtain supervision. *Id.* The next day, September 6, 2017, Dr. Eisenberg sent an email to Dr. Treinen in which he called the PIP a "farce" and stated that the procedures at issue had been performed correctly. *Id.* at 18.

Defendants received notice of Dr. Eisenberg's charges on September 15, 2017. (ECF No. 5 at 2). On September 18, 2017, McEvoy sent an email to 17 shareholder radiologists of RAN (with the exception of Dr. Eisenberg) asking them to vote on whether Dr. Eisenberg should be terminated. (ECF No. 26 at 18–19). All 17 shareholder radiologists voted in favor of terminating Dr. Eisenberg. *Id.* at 19. On September 29, 2017, defendants terminated Dr. Eisenberg's employment. *Id.* RAN has not hired any new radiologists after Dr. Eisenberg's termination. *Id.*

**II.      Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

James C. Mahan
U.S. District Judge

- 3 -

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

### III. Discussion

Dr. Eisenberg brings three claims: (1) age discrimination, (2) retaliation, and (3) breach of contract. Defendants argue that there are no genuine issues of material fact regarding any of Dr. Eisenberg's claims and they are therefore entitled to judgment in their favor. The court addresses each claim in due course.

*a. Age discrimination*

At summary judgment, Age Discrimination in Employment Act ("ADEA") claims are analyzed through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). "Establishing a prima facie . . . case in response to a motion for summary judgment requires only minimal proof and does not even need to rise to the level of a preponderance of the evidence." *Palmer v. Pioneer Assocs. Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003) (internal citations and quotations omitted).

To establish a *prima facie* case, plaintiff must allege four elements: (1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action that give rise to an inference of discrimination. *See, e.g.*, *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011).

"If plaintiffs establish a prima facie case, the burden of production, not of persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155 (internal citations and quotations omitted). "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination." *Id.*

"A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the

1    employer." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1171 (9th Cir. 2007) (internal citations,
2    quotations, and alterations omitted).  "All the evidence as to pretext—whether direct or
3    indirect—is to be considered cumulatively." *Id.*

4        A preliminary issue is whether Dr. Eisenberg is considered an employee under the
5    ADEA.  Defendants argue that Dr. Eisenberg is not an employee as defined by the ADEA
6    because he is a shareholder, and thus is not entitled to its protection.  (ECF No. 26 at 21).
7    Alternatively, Dr. Eisenberg contends that he is an employee under the ADEA, based on factors
8    articulated by the Supreme Court in *Clackamas Gastroenterology. (See ECF No. 33 at* 11–14
9    *(citing Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440 (2003))).  Defendants
10   dispute the factual allegations that support Dr. Eisenberg's analysis under *Clackamas*
11   *Gastroenterology*, demonstrating that there is a genuine issue of material fact as to whether Dr.
12   Eisenberg is an employee, and subject to the protection of the ADEA.  (ECF No. 36 at 16–18).

13       Dr. Eisenberg contends that he has established a *prima facie* age discrimination case.
14   (*See* ECF No. 33).  There is no dispute that Dr. Eisenberg is a member of a protected class
15   because he is over age 40.  *Id.* at 19.  Additionally, there is no dispute that Dr. Eisenberg was
16   subject to an adverse employment action when he was terminated.  *Id.* at 20.  Rather, the crux of
17   the dispute between Dr. Eisenberg and defendants is whether Dr. Eisenberg performed his job
18   satisfactorily, and whether similarly situated individuals outside his protected class were treated
19   more favorably.

20       On one hand, defendants argue that Dr. Eisenberg has a long history of performance and
21   behavioral issues that led to his termination.  (ECF No. 26 at 22).  They also argue that Dr.
22   Eisenberg violated a term of the PIP by not obtaining supervision for a specified procedure.  *Id.*
23   at 18.  Further, they contend that Dr. Eisenberg has not established that similarly situated
24   individuals outside his protected class were treated more favorably, more specifically, "that he
25   was replaced by substantially younger employees." *Id*.  at 22.

26       On the other hand, Dr. Eisenberg contends that his "performance was strong" and
27   disputes defendants' allegations that he was "cherry-picking" jobs to inflate his performance
28   metrics. (ECF No. 33 at 20).  Specifically, Dr. Eisenberg argues that defendants subjected him

James C. Mahan
U.S. District Judge

- 6 -

to a heightened standard of scrutiny, and any allegations of performance issues are a result of defendants' animus. *Id.* Moreover, although Dr. Eisenberg does not allege that he was replaced by substantially younger employees, he does allege that he was terminated under circumstances giving rise to an inference of discrimination. *Id.* As evidence, Dr. Eisenberg references the proposed plan to change the status of radiologists age 65 and older from shareholder to associate. *Id.* at 20–21.

Although defendants have articulated a legitimate, non-discriminatory reason for Dr. Eisenberg's termination, Dr. Eisenberg has also provided evidence of animus that could prove pretext. These are not questions of law for the court to decide. Rather, they are questions of fact for the jury to determine at trial. *See Stewart v. Van De Kamp*, 859 F.2d 924 (9th Cir. 1988). The court finds that Dr. Eisenberg has sufficiently established an age discrimination cause of action, and genuine issues of material fact exist remain. Accordingly, defendants' motion for summary judgment on Dr. Eisenberg's age discrimination claim is denied.

    *b. Retaliation*

To establish a claim of retaliation under Title VII, an employee must prove that (1) the employee engaged in a protected activity, (2) the employee suffered an adverse employment action, and (3) there was a causal link between the employee's protected activity and the adverse employment action. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006). An employee engages in protected activity by: (1) opposing any practice made unlawful by Title VII or (2) making a charge, testifying, or participating in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e–3(a).

Defendants argue that Dr. Eisenberg has failed to establish that there was a causal link between his protected activity—filing charges with NERC and the EEOC—and the adverse employment action. (ECF No. 26 at 24). Specifically, defendants contend that Dr. Treinen was the only shareholder who was aware of Dr. Eisenberg's protected conduct. They argue that the other shareholder radiologists who voted to terminate his employment were not aware of Dr. Eisenberg's protected conduct and thus Dr. Eisenberg's retaliation claim fails. *Id.*

1    Dr. Eisenberg contends that he has enough evidence to establish a causal link because Dr. Treinen "admitted that he knew of the [c]harge at the time Dr. Eisenberg was fired," and the time period between Dr. Treinen becoming aware of the charge and the termination "was only a few days." (ECF No. 33 at 27). "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas Cty.,* 341 F.3d 858, 865 (9th Cir.2003). Further, "where . . . the person who exhibited discriminatory animus influenced or participated in the decision-making process, a reasonable factfinder could conclude that the animus affected the employment decision." *Dominguez-Curry v. Nev. Trans. Dep't,* 424 F.3d 1027, 1038–39 (9th Cir. 2005).

Dr. Treinen is a shareholder and participated in the decision-making process to terminate Dr. Eisenberg's employment. (ECF No. 26 at 24). Although other shareholders who voted to terminate Dr. Eisenberg's employment may not have been aware of his charges with NERC and the EEOC, there is a question of material fact as to whether Dr. Treinen influenced the decision. This is further supported by the short temporal proximity—two weeks—between Dr. Eisenberg's protected conduct and the termination of his employment. Notably, defendants put termination to a vote only three days after receiving notice of the NERC/EEOC complaint. *Id.* at 18.

Accordingly, there is a genuine issue of material fact as to the causal link between Dr. Eisenberg's protected conduct and the adverse employment action. Defendants' motion for summary judgment on Dr. Eisenberg's retaliation claim is denied.

c. *Breach of contract*

Dr. Eisenberg claims he entered into a contract with RAN wherein Dr. Eisenberg would receive a 90-day written notice before being terminated. Neither party has a copy of the written contract setting forth this term. Dr. Eisenberg has provided an "employment-stock purchase agreement," to which he is not a party, and alleges the terms are the same in the disputed contract. (ECF No. 33-3 at 108).

Defendants argue that this is a "sham issue of fact" because Dr. Eisenberg's assertions conflict with this prior deposition testimony in which he testified that "he has no . . . written

**James C. Mahan**
**U.S. District Judge**

- 8 -

agreement pertaining to his employment . . . [other than the employment-stock purchase agreement]." (ECF No. 36 at 19).

Nevada courts do not preclude a plaintiff from pursuing a breach of contract action when the plaintiff fails to retain a copy of a written contract. *See TMX, Inc. v. Volk*, 131 Nev. 1355 (Nev. App. 2015). Although Dr. Eisenberg does not have a copy of the agreement, he testified that there was an agreement that contained the aforementioned term. (*See* ECF No. 33 at 29). He also provided a copy of an agreement—which involved other radiologists—that supposedly mirrors the terms of his agreement. *See id.* The court finds that this is sufficient to demonstrate a genuine issue of material fact as to whether a contract existed, and accordingly, defendants' motion for summary judgment on this issue is denied.

    d.  *Joint Liability*

Lastly, the parties dispute that defendants RAN and PMI are one employer for purposes of liability under the ADEA. The Ninth Circuit uses a four-factor test to determine whether two entities constitute a single employer for purposes of the ADE: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership of financial control." *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1213 (9th Cir. 1989).

Defendants argue that claims against PMI should be dismissed because PMI and RAN "are completely separate entities." (ECF No. 26 at 26). Defendant contends that Dr. Eisenberg has not presented "evidence that PMI had any authority to control, supervise, hire and fire, discipline, pay or keep his employment records." *Id.* Additionally, defendants posit that Dr. Eisenberg has admitted in his deposition that RAN was his only employer, and any allegations contrary to this are bald assertions. (ECF No. 36 at 20).

Dr. Eisenberg contends that, "while there may be some financial separation," "there is common ownership, that personnel management is centralized" and "that radiologists who are employed by RAN who do work on behalf of PMI are not paid separately by PMI." (ECF No. 33 at 15). The court finds that this dispute demonstrates that there is a genuine issue of material fact as to whether RAN and PMI are one employer for purposes of liability under the ADEA, and dismissal for claims against PMI is denied.

James C. Mahan
U.S. District Judge

**Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 26) be, and the same hereby is, DENIED.

DATED July 27, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**